Robert E.L. Bonaparte, OSB #883411
Bonaparte & Bonaparte, LLP
620 SW Main Street, No. 310
Portland, OR 97205
Phone: 503-242-0005
Fax: 503-294-0015
Email: bob@bb-law.net
*Attorneys for Plaintiff Jacob Wakeman*
*by and through his guardian ad litem Kristina Ensbury*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| JACOB WAKEMAN, by and through his guardian ad litem KRISTINA ENSBURY, | Case No.: 3:21-cv-200-SB |
| Plaintiff, | |
| v. | PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| EAGLE WEST INSURANCE COMPANY, | |
| Defendant. | |

PAGE i- PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

# TABLE OF CONTENTS

I.    Brief Summary of Material Facts ........................................................................ 1

II.   The Anti-Assignment Provision of Eagle West's Policy Does Not Bar
      Assignment of Jacob's Claims or Deprive Him of Standing to Bring this
      Action; O.R.S. § 31.825 Likewise Does Not Bar Assignment of Jacob's
      Excess Judgment Claim ................................................................................... 4

      A.   The Policy's "Anti-Assignment Clause" Does Not Bar Either of Jacob's
           Claims ...................................................................................................... 6

      B.   O.R.S. 31.825 Does Not Bar Jacob's Claim for Failure to Settle ............... 9

III.  Eagle West Fails to Establish That It Did Not Owe its Insureds a Fiduciary
      Duty to Settle Covered Claims Against Them in Good Faith at the Time It
      Received Jacob's Policy-Limits Settlement Offer .......................................... 12

IV.   As Established in Jacob's Motion for Partial Summary Judgment, the
      Policy's "Act or Omission of an 'Insured'" Coverage Exclusion is
      Inapplicable to Jacob's Claims Against the Insureds as a Matter of Oregon
      Law ................................................................................................................. 15

      CONCLUSION ................................................................................................ 20

# TABLE OF AUTHORITIES

*Alexander Mfg. v. Ill. Union Ins. Co.*, Alexander Mfg. v. Ill. Union Ins. Co., 560
F.3d 984 (9th Cir. 2009) ...................................................................................... 7,8

*Allstate Ins. Co. v. Hudler*, 2011 U.S. Dist. LEXIS 42512, *8, 2011 WL 1498367,
* 3 (D. Or. 2011) .................................................................................................. 13

*Allstate Ins. Co. v. Morgan*, 123 F. Supp. 3d 1266 (D. Or. 2015) ...................... 17-19

*Booth-Kelly Lumber Co. v. Oregon & C. R. Co.*, 98 Or. 21, 193 P. 463 (1920) ...... 11

*Brownstone Homes Condo. Ass'n v. Brownstone Forest Heights, LLC*, 358 Or.
223, 363 P.3d 467 (2015) ................................................................................. passim

*Clinton Condos. Owners Ass'n v. Truck Ins. Exch.*, 282 Or. App. 484, 385 P.3d
1279 (Or. App. 2016) ........................................................................................... 8, 9

**BONAPARTE & BONAPARTE, LLP**
620 SW MAIN STREET, NO. 310
PORTLAND, OR 97205
Telephone: (503) 242-0005
email: bob@bb-law.net

*Clipper Exxpress v. Rocky Mtn. Motor Tariff Bureau, Inc.*, 690 F.2d 1240 (9th Cir. 1982) ................................................................................................................ 11

*Country Mut. Ins. Co. v. Larson*, No. 08-6154-TC, 2010 U.S. Dist. LEXIS 27043 (D. Or. Feb. 24, 2010) ............................................................................................ 19

*Groce v. Fid. Gen. Ins. Co.*, 252 Or. 296, 448 P.2d 554 (1968)............................... 6-9

*Holloway v. Republic Indem. Co. of Am.*, 341 Or. 642, 147 P.3d 329 (2006)....................... 7, 8

*Jaloff v. United Auto Indem. Exch.*, 120 Or. 381, 250 P. 717 (1926) ....................................... 13

*Minkler v. Safeco Ins. Co. of Am.*, 49 Cal. 4th 315, 110 Cal. Rptr. 3d 612, 232 P.3d 612 (2010)...................................................................................................... 16-19

*Ristine v. Hartford Ins. Co.*, 195 Or. App. 226, 97 P.3d 1206 (2004) ...................................... 17

*Safeco Ins. Co. of Am. v. Barnes*, 133 Or. App. 390, 891 P.2d 682 (1995)............................ 15

*Scheland v. Erpelding*, 6 Or. 258 (1877) .....................................................................

*Stanford v. Am. Guar. Life Ins. Co.*, 280 Or. 525, 571 P.2d 909 (1977) ................................. 17

*State ex rel. Peterson v. Martin*, State ex rel. Peterson v. Martin, 180 Or. 459, 176 P.2d 636 (1947)...................................................................................................... 11

*St. Paul Fire & Marine Ins. Co. v. McCormick & Baxter Creosoting Co.*, 324 Or. 184, 923 P.2d 1200 (1996)........................................................................................ 20

*United Pacific Ins. Co. v. Pacific Northwest Research Foundation*, 39 Or. App. 873, 593 P.2d 1278 (1979)................................................................................... 12-15

## TABLE OF RULES AND STATUTES

Or. Rev. Stat. § 742.031.......................................................................................... 9, 1

Or. Rev. Stat. § 31.825.........................................................................................passim

Fed. R. Civ. P. 15(c)(1)(B) ...................................................................................... 11

**BONAPARTE & BONAPARTE, LLP**
620 SW MAIN STREET, NO. 310
PORTLAND, OR 97205
Telephone: (503) 242-0005
email: bob@bb-law.net

Defendant Eagle West Insurance Company ("Eagle West") offers three arguments in support of its motion for summary judgment in this action. Each of Eagle West's arguments is meritless. Plaintiff Jacob Wakeman ("Jacob"), by and through his guardian *ad litem*, respectfully offers the following points and authorities in opposition to Eagle West's motion and requests that the court deny Eagle West's motion in its entirety.

## I.    Brief Summary of Material Facts

The facts material to and underlying Jacob's claims in this action are set forth in detail in Jacob's cross-motion for partial summary judgment (#17). Accordingly, Jacob provides only a brief summary of the facts here, for the convenience of the court. A more detailed statement of the facts, together with citations to the undisputed facts of record, may be found in Jacob's cross-motion at pages 6-13.

Eagle West issued a homeowners insurance policy designated as No. 27-HOC-2-1891730 (the "Policy") to its insureds Justin Gaige and Andreua Knight (Eagle West's "Insureds" or the "Assignors") with an effective period of December 3, 2017 to December 3, 2018. *See* Declaration of Robert E.L. Bonaparte dated August 2, 2021 (#20) ("Bonaparte Decl. I"), Exh. A (the Policy). The Policy required Eagle West to indemnify the Insureds, to provide them with a defense, and to negotiate settlement in good faith in connection with claims alleging their liability for bodily injury caused by an accident occurring in their home. Policy at 22. The Policy additionally required Eagle West to "pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing 'bodily injury,'" where the person who suffered the injury was not an insured but was on the insured premises "with the permission of an 'insured'" at the time the injury occurred. *Id.*

PAGE 1- PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**BONAPARTE & BONAPARTE, LLP**
620 SW MAIN STREET, NO. 310
PORTLAND, OR 97205
Telephone: (503) 242-0005
email: bob@bb-law.net

The Policy contains certain coverage exclusions. The sole ground upon which Eagle West repudiated its obligations to the Insureds under the Policy is an exclusion titled "Act or omission of an 'insured'" which provides that Eagle West owes no duty to cover claims alleging "'[b]odily injury' . . . arising out of an act or omission of an 'insured,' which was the basis for an 'insured' . . . pleading . . . nolo contendere to a charge of violating a criminal statute or law." *Id.* at 25.

The Insureds' minor son Cainen Gaige ("Cainen") resided with the Insureds in their home. By the Policy's plain language, Cainen (as a relative of the Insureds residing with them at the insured premises) was at all material times an insured under the Policy. *Id.* at 2. Critically, the Policy contains what is known as a *severability-of-interests* or *separate insurance* clause expressly providing that "This insurance applies separately to each 'insured.'" *Id.* at 28.

On December 9, 2017, during the effective period of the Policy, Jacob visited his friend Cainen at the Insureds' home. During the course of that visit, a loaded firearm Cainen was holding discharged. The bullet struck Jacob in the neck, then passed through his neck and struck him again in the right upper arm, again passing through and exiting Jacob's body.  Jacob's resulting injuries were serious, extensive, and in some cases possibly permanent. Cainen subsequently pled nolo contendere to assault and related charges arising out of the incident. The Insureds knew that Cainen possessed the firearm but failed to take adequate measures to dispose of the weapon, to ensure that Cainen disposed of the weapon, to control Cainen's use of the weapon, otherwise to safeguard the weapon, or to keep guests or invitees like Jacob safe from the weapon.

On December 13, 2018, Jacob brought an action (the "Wasco County action") through his guardian *ad litem* against the Insureds and Cainen in the Wasco County Circuit Court.

PAGE 2- PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BONAPARTE & BONAPARTE, LLP
620 SW MAIN STREET, NO. 310
PORTLAND, OR 97205
Telephone: (503) 242-0005
email: bob@bb-law.net

Through his complaint in the Wasco County action as originally filed, Jacob alleged Cainen's liability for assault and negligence and the Insureds' liability for negligent supervision. Jacob subsequently amended his complaint in the Wasco County action to state four claims: (1) a negligence claim against Cainen (premised on Cainen's alleged negligence in disengaging the safety on the firearm while it was loaded, pointing it and jabbing it at Jacob, engaging in horseplay with Jacob while holding a loaded firearm, and discharging the firearm while it was pointed toward Jacob), (2) a negligent entrustment claim against the Insureds (premised on the Insureds' failure to ensure that Cainen safely and responsibly disposed of the firearm), (3) a negligent supervision claim against the Insureds (premised on the Insureds' failure adequately to supervise Cainen notwithstanding their knowledge that he had a firearm in his possession, that he was a minor, that he had no firearms safety training, that he was a regular drug user, that he was a convicted felon at the time Jacob was injured, and that he had experienced challenges in regulating his own conduct), and (4) a premises liability claim against the Insureds (premised on the Insureds' failure to take reasonable care to protect Jacob from dangerous activities on the insured premises while Jacob was a social guest there).

The Insureds tendered the original complaint in the Wasco County action to Eagle West and requested a defense on January 15, 2019. Eagle West initially complied with that request, as it was required to do under the Policy. However, Eagle West subsequently (and improperly) withdrew its defense and denied coverage in connection with Jacob's claims against the insureds in the Wasco County action on the sole ground of the "Act or omission of an 'insured'" exclusion.

On April 5, 2019, Jacob's then-counsel wrote to Eagle West's counsel asserting that Eagle West's denial of coverage had necessarily been in bad faith and making a formal demand

PAGE 3- PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

for policy-limits settlement. Jacob's counsel included with his policy-limits demand a draft of the subsequently filed amended complaint in the Wasco County action. Eagle West refused to consider Jacob's settlement offer.

On July 21, 2020, Jacob's guardian Kristina Ensbury and the Insureds/Assignors entered an agreement pursuant to which the parties agreed that Jacob would not execute the then-contemplated stipulated judgment against the Insureds in the Wasco County action in exchange for the Insureds' assignment to Jacob of their claims against Eagle West. On July 24, 2020, the Wasco County Circuit Court entered a Stipulated General Judgment and Money Award against the Insureds and Cainen in the Wasco County action. The court awarded Jacob economic damages in the amount of $188,000 and non-economic damages in the amount of $2,800,000. On August 3, 2021, Ensbury and the Insureds/Assignors voided the July 21, 2020 assignment of claims and executed a new assignment of the Insureds' claims against Eagle West with an effective date of July 25, 2020.

Jacob brought this action against Eagle West on February 5, 2021, asserting Eagle West's liability for (1) breach of its duties under the Policy to defend and indemnify the Insureds in connection with Jacob's claims in the Wasco County action and (2) breach of its duty to conduct settlement negotiations in good faith in connection with those same claims.

II.     **The Anti-Assignment Provision of Eagle West's Policy Does Not Bar Assignment of Jacob's Claims or Deprive Him of Standing to Bring this Action; O.R.S. § 31.825 Likewise Does Not Bar Assignment of Jacob's Excess Judgment Claim**

As discussed in Jacob's cross-motion for partial summary judgment (#17), the Policy contains a provision as follows: "Assignment of this policy will not be valid unless [Eagle West] give[s] [its]written consent." Policy at 31. Eagle West now argues that this purported "anti-

PAGE 4- PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

assignment clause" bars both of Jacob's claims and deprives him of standing to bring this action. Defendant's Motion for Summary Judgment (#15) at 14-18. Eagle West's argument is at best deliberately disingenuous, and appears on its face to be intended to mislead the court.

At pages 17 and 18 of the memorandum in support of its motion, Eagle West accurately describes O.R.S. § 31.825 and the leading Oregon case construing it, *Brownstone Homes Condo. Ass'n v. Brownstone Forest Heights, LLC*, 358 Or. 223, 363 P.3d 467 (2015). As Eagle West observes, *Brownstone* stands for the proposition that, to be effective under Section 31.825, assignment of an insured's claim against an insurer that the insured has "as a result of" a judgment against the insured – that is, a claim for damages in excess of policy limits arising out of the insurer's bad-faith failure to negotiate settlement of claims against the insured – must follow rather than precede issuance of the judgment against the insured. *See Brownstone*, 358 Or. at 236; *see also* O.R.S. § 31.825.

It is all the more striking in light of Eagle West's accurate discussion of Section 31.825 and of *Brownstone* at pages 17 and 18 that its preceding discussion (at pages 14-17 of Eagle West's motion) improperly seeks to apply those same authorities and that same principle to breach of contract claims that the insured indisputably does *not* have "as a result of" any judgment against the insured. In fact, as Eagle West appears to understand (notwithstanding the clear overbreadth of its argument), the purported "anti-assignment clause" of the Policy is inapplicable as a matter of law to either of Jacob's claims in this action. Moreover, although offered under the heading "The Anti-Assignment Clause Precludes Plaintiff's Claims," Eagle West's Section 31.825 argument does not rely in any degree on the Policy's purported anti-assignment clause. Eagle West's motion instead conflates two independent and discrete arguments in what appears to be an attempt to distract the court from each of the individual

PAGE 5- PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

arguments' fatal flaws.

In the discussion that follows, Jacob addresses Eagle West's two conflated arguments separately.

> A.    The Policy's "Anti-Assignment Clause" Does Not Bar Either of Jacob's Claims

As noted, the Policy contains a provision as follows: "Assignment of this policy will not be valid unless [Eagle West] give[s] [its]written consent." Policy at 31. Of course, as discussed in Jacob's Motion for Partial Summary Judgment, the Assignors did not purport to assign *the Policy* to Jacob, but rather their *causes of action* for its breach. By its plain terms, the purported "anti-assignment clause" is inapplicable to the assignment of claims at issue here.

Even if that were not the case, as a matter of Oregon law, a provision like the one contained in Eagle West's Policy does not bar assignment of a cause of action for an insurer's breach of contract. *See Groce v. Fid. Gen. Ins. Co.*, 252 Or. 296, 306, 448 P.2d 554, 559 (1968). At issue in *Groce* was the enforceability of an insured's assignment of a claim for bad-faith failure to settle notwithstanding a contractual provision that "[a]ssignment of interest under this policy shall not bind the company until its consent is endorsed hereon." *Id.* (emphasis supplied). The *Groce* court stated that "the contention that such a clause prohibits the insured from assigning his cause of action need not detain us. It is well settled that such a provision does not preclude the assignment of a cause of action for damages for breach of a contract." As a matter of Oregon law, such an assignment could be effective to bar *pre-loss* assignment of *insurance coverage* to a third party, but is not effective to bar *post-loss* assignment of a *cause of action* sounding in contract. *See id.*

PAGE 6- PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**BONAPARTE & BONAPARTE, LLP**
620 SW MAIN STREET, No. 310
PORTLAND, OR 97205
Telephone: (503) 242-0005
email: bob@bb-law.net

The Ninth Circuit discussed, construed, and applied *Groce* in *Alexander Mfg. v. Ill.*

*Union Ins. Co.*, 560 F.3d 984, 986-989 (9th Cir. 2009). The *Alexander* court was presented with

a policy provision substantially similar to that at issue in *Groce*. *See Alexander*, 560 F.3d at 986.

The court was called upon in part to consider whether *Groce* remained good law notwithstanding

the Oregon Supreme Court's subsequent decision in *Holloway v. Republic Indem. Co. of Am.*,

341 Or. 642, 147 P.3d 329 (2006). The *Holloway* court had considered a provision that "[the

insured's] rights or duties under this policy may not be transferred without [the insurer's] written

consent." *Holloway*, 341 Or. at 645 (emphasis supplied); *see also Alexander*, 560 F.3d at 987.

The *Holloway* court found that, as worded, such a provision unambiguously barred assignment

of any and all "rights or duties" of the insured, without regard to whether the assignment

occurred pre- or post-loss. *See Holloway*, 341 Or. at 651.

The *Alexander* court expressly found that *Groce* remained controlling law

notwithstanding the intervening *Holloway* decision, and that a policy provision similar to that at

issue in *Groce* could only bar *pre-loss* assignments of *insurance coverage*. *See Alexander*, 560

F.3d at 988. Moreover, the *Alexander* court, applying Oregon rules of insurance policy

construction, further held that "[e]ven if *Groce* were not binding, th[e] anti-assignment clause is

ambiguous" and that the ambiguity must necessarily be resolved in favor of allowing assignment

of post-loss causes of action. *Id.* Specifically, the Ninth Circuit determined that it was ambiguous

whether an insured's "interest under th[e] policy" referred to the insured's rights to coverage and

indemnification under the policy itself – expressly as opposed to any "interest in later causes of

action" – or alternatively to rights and duties including causes of action arising after a loss. *Id.* at

988-989. Because the parties' policy – like the Policy here – did not contain definitions that

resolved the ambiguity, the *Alexander* court resolved it against the insurer (as the drafter of the

PAGE 7- PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

**BONAPARTE & BONAPARTE, LLP**
620 SW MAIN STREET, NO. 310
PORTLAND, OR 97205
Telephone: (503) 242-0005
email: bob@bb-law.net

policy), and held that *even if* Groce *did not control*, as a matter of Oregon law the provision did not bar post-loss assignment of causes of action sounding in contract. *See id.* at 988-989.

The provision at issue here does not purport to bar assignment of "rights and duties" under the Policy, but rather bars assignment of the Policy itself. *See* Policy at 31. The ambiguity identified by the *Alexander* court is thus equally present in the instant provision, with even less support in its plain language for the interpretation asserted by Eagle West. In the absence of any subsequent decision of the Oregon Supreme Court casting doubt on the continued viability of the rule stated in *Groce* – and no such authority exists – this court is bound to follow *Alexander*. Under the reasoning of *Alexander*, the Policy provision at issue here is more similar to that at issue in *Groce* than the one the *Holloway* court addressed, and lends more support to the conclusion that its ambiguity must be resolved to permit assignment of post-loss causes of action.

Eagle West's argument to the contrary is unavailing. Eagle West does not address either *Groce* or *Alexander*, but rather relies almost exclusively on the decision of the Oregon Court of Appeals in *Clinton Condos. Owners Ass'n v. Truck Ins. Exch.*, 282 Or. App. 484, 385 P.3d 1279 (Or. App. 2016). However, the *Clinton* court did not construe a provision like the ones at issue in *Groce*, *Alexander*, and this case, but rather a provision substantially identical to the one at issue in *Holloway*, providing that "[the insured's] <u>rights and duties</u> under this policy may not be transferred without [the insurer's] written consent." *Clinton*, 282 Or. App. at 485 (emphasis supplied). The provision at issue in *Clinton* was thus governed by the Oregon Supreme Court's reasoning in *Holloway*, and accordingly the court affirmed that the insured's attempted assignment of claims had been ineffective. *See id.* Separately and independently of its analysis of the policy's anti-assignment provision, the *Clinton* court also rejected the argument that,

PAGE 8- PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

notwithstanding the anti-assignment provision, the assignment could have been effective pursuant to Section 31.825. *See id.* at 485-487. The court reasoned that Section 31.825 was inapposite because it applies only to excess judgment claims, and not to claims for breach of the duties to defend or indemnify. *See id.* Eagle West now disingenuously conflates the *Clinton* court's two discrete analyses. But in fact the *Clinton* court's decision as it applies to the construction of anti-assignment provisions is no more than an application of *Holloway*. *See id.* at 485. Accordingly, this court is bound by the *Alexander* court's holding that *Holloway* did not abrogate *Groce*, and should likewise find *Clinton* inapposite here.

For all of these reasons, the Policy's purported "anti-assignment clause" did not, as a matter of Oregon law, preclude the Insureds' assignment of their claims against Eagle West to Jacob.[1]

### B.    O.R.S. 31.825 Does Not Bar Jacob's Claim for Failure to Settle

As noted, excess judgment claims against an insurer that arise as a result of the insurer's failure to settle claims against its insured within policy limits must be assigned *after* issuance of judgment against the insured, and not before. *See Brownstone*, 358 Or. at 236; *see also* O.R.S. § 31.825. Section 31.825 provides that "A defendant in a tort action against whom a judgment has been rendered may assign any cause of action that defendant has against the defendant's insurer as a result of the judgment to the plaintiff in whose favor the judgment has been entered. That assignment and any release or covenant given for the assignment shall not extinguish the cause

---

[1] Moreover, even if the Policy contained a provision that unambiguously and enforceably barred assignment of causes of action for breach of the Policy, as discussed in Jacob's Motion for Partial Summary Judgment, Oregon statutory law provides that, even in the absence of an assignment of claims, a party who obtains final judgment for damages against an insured arising out of an injury may pursue a policy-limits claim against the insured's insurer in the event the judgment is not collected from the insured. *See* O.R.S. § 742.031.

PAGE 9- PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

BONAPARTE & BONAPARTE, LLP
620 SW MAIN STREET, NO. 310
PORTLAND, OR 97205
Telephone: (503) 242-0005
email: bob@bb-law.net

of action against the insurer unless the assignment specifically so provides." O.R.S. § 31.825. The *Brownstone* court reasoned that the statute's use of the past tense in the phrases "against whom a judgment <u>has been</u> rendered" and "in whose favor the judgment <u>has been</u> entered" foreclosed any possibility that Section 31.825 could apply in the event of assignments preceding issuance of judgment against the insured. *Brownstone*, 358 Or. at 233 (emphasis supplied). Accordingly, on that basis (and on the additional basis of its review of legislative history), the *Brownstone* court held that the effect of the statute is "to allow insured defendants to assign a specific type of claim against their insurer—claims that the insurer's negligent or bad faith failure to settle within policy limits had resulted in an 'excess judgment'—to the plaintiff, in exchange for a covenant not to execute against the defendant, without extinguishing the underlying liability. . . [a]nd . . . to permit that outcome only when the excess judgment is in place before the assignment is given." *Id.* at 236.

Jacob acknowledges that Section 31.825 and *Brownstone* govern assignment of excess judgment claims.[2] Jacob further acknowledges that the Insureds' July 21, 2020 assignment preceded the July 24, 2020 issuance of the Wasco County judgment against them. However, on August 3, 2021 the parties voided the July 21, 2020 assignment and executed a new assignment

---

[2] Eagle West offers a brief throwaway argument, citing no authority in support, that Jacob's excess judgment claim for bad-faith failure to settle did not "result from" the Wasco County judgment against the insureds and is therefore outside the scope of Section 31.825. *See* Defendant's Motion for Summary Judgment at 18. Although the contours of the argument are not entirely clear, Eagle West's reasoning appears to be that too much time elapsed between issuance of the judgment against the Insureds and Eagle West's wrongful repudiation of its obligations under the Policy. *See id.* However, the undisputed facts establish that, had Eagle West accepted the policy-limits settlement offer tendered by Jacob's then-counsel on April 5, 2019 (*see* Bonaparte Decl. I, Exh. F), no judgment would have issued against the Insureds in the Wasco County action (because those claims would have been released pursuant to the contemplated settlement). This is precisely what "as a result of" means in the context of excess judgment claims. *See Brownstone*, 358 Or. at 363 ("If, for example, an insurer refused in bad faith to settle within the applicable policy limits, leading to a judgment against the insured in excess of the policy limits, such a claim could be said to be 'as a result of a judgment'"). Given that Eagle West's chief argument in favor of summary judgment relies heavily on application of Section 31.825, it is difficult to understand why Eagle West offers this meritless argument even on a throwaway basis.

PAGE 10- PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BONAPARTE & BONAPARTE, LLP
620 SW MAIN STREET, NO. 310
PORTLAND, OR 97205
Telephone: (503) 242-0005
email: bob@bb-law.net

with an effective date of July 25, 2020. *See* Declaration of Robert E.L. Bonaparte dated August

4, 2021 (#23) ("Bonaparte Decl. II"), ¶¶ 3-9, Exh. 3 ("Bonaparte Decl. III"), Exh. M (the

assignment effective as of July 25, 2020). The voided assignment of July 21, 2020 is a legal

nonentity with no effect on Eagle West's obligations to its Insureds or their assignee. *See*

*Scheland v. Erpelding*, 6 Or. 258, 265 (1877) (a voided agreement is a legal nullity); *Booth-Kelly*

*Lumber Co. v. Oregon & C. R. Co.*, 98 Ore. 21, 31, 193 P. 463 (1920) ("A void contract is a

mere nullity. . . [;] [i]t is void as to everybody whose rights would be affected by it if valid");

*State ex rel. Peterson v. Martin*, 180 Or. 459, 475, 176 P.2d 636 (1947) ("A void act is a mere

nullity, and has no legal effect whatever"). The assignment effective as of July 25, 2020 does not

violate Section 31.825. *See Brownstone*, 358 Or. at 236.

       No question of standing arises in connection with the July 25, 2020 assignment, because

its effective date precedes the date this action was filed. Moreover, as discussed above, Jacob

would have had standing to pursue his claim for breach of the duties to defend and indemnify as

of the date this action was filed even in the absence of any effective assignment of claims. *See*

O.R.S. § 742.031. Finally, for the reasons discussed in Jacob's Motion for Enlargement of Time

(#21), Jacob's pleading does not require amendment to account for the July 25, 2020 assignment

because the pleading does not recite the effective date of the Insureds' assignment of claims to

him and therefore already conforms to the facts as they have developed since the pleading was

first filed. If the court were nevertheless to require Jacob to go through the empty formalism of

refiling his complaint, Jacob's excess judgment claim as pled in the putative amended pleading

would plainly relate back to the date this action was first filed under Federal Civil Procedure

Rule 15(c)(1)(B). *See* Fed. R. Civ. P. 15(c)(1)(B); *see also Clipper Exxpress v. Rocky Mtn.*

*Motor Tariff Bureau, Inc.*, 690 F.2d 1240, 1260 n.29 (9th Cir. 1982) ("the relation back doctrine

PAGE 11- PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

of Rule 15(c) is to be liberally applied").

For these reasons, Section 31.825 does not bar Jacob's claim for bad-faith failure to settle.

**III.    Eagle West Fails to Establish That It Did Not Owe its Insureds a Fiduciary Duty to Settle Covered Claims Against Them in Good Faith at the Time It Received Jacob's Policy-Limits Settlement Offer**

In the alternative to its primary argument that Jacob lacks standing to bring this action, Eagle West argues that it cannot be liable in connection with Jacob's excess judgment claim because at the time it was invited to negotiate policy-limits settlement of Jacob's claims against the Insureds, it had already repudiated its obligation to continue funding its defense of its Insureds. *See* Defendant's Motion for Summary Judgment at 18-23. Eagle West's argument falls well short of establishing that it successfully dodged its fiduciary duties in connection with Jacob's claims against the Insureds in the Wasco County action.

As Eagle West concedes, it initially undertook its Insureds' defense and appointed counsel to represent them when it received notice of Jacob's claims in the Wasco County action. As Eagle West also concedes, "once [an insurer] has commenced its representation of the [insured] it cannot withdraw [the defense] if such withdrawal would prejudice the [insured]." *United Pacific Ins. Co. v. Pacific Northwest Research Foundation*, 39 Or. App. 873, 877, 593 P.2d 1278, 1280 (Or. App. 1979). However, Eagle West asserts to the court that "when an insurer withdraws [its proffered defense] in accordance with a valid reservation of rights letter, the insured does not suffer prejudice." Defendant's Motion for Summary Judgment at 19-20. Eagle West's assertion is an over-simplification of a complex legal proposition.

PAGE 12- PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

In support, Eagle West cites two cases: a decision of the District of Oregon, *Allstate Ins. Co. v. Hudler*, 2011 U.S. Dist. LEXIS 42512, *8, 2011 WL 1498367, * 3 (D. Or. 2011), and a decision of the Oregon Supreme Court, *Jaloff v. United Auto Indem. Exch.*, 120 Or. 381, 392-393, 250 P. 717, 721 (1926). *See id. Jaloff* is inapposite, however, standing only for the proposition that an "insurer cannot, after undertaking the defense of a suit on other claims, withdraw from the defense and cast the burden thereof on the [in]sured on the theory that it had mistaken the nature of its obligation under the policy" without any suggestion that an insurer may nevertheless withdraw its proffered defense pursuant to a reservation of rights. *Jaloff*, 120 Or. at 392-393. And Jacob submits that *Hudler* – which is not binding authority on this court – oversimplifies and misconstrues the Oregon authority it expressly purports to rely on.

The *Hudler* court exclusively cited *United Pacific* (a case which Eagle West similarly oversimplifies and mischaracterizes in its Motion for Summary Judgment) in support of its assertion that issuance of a reservation of rights letter inoculates an insurer from a claim of prejudice. However, the *United Pacific* court offered a much more nuanced construction of the law. The reservation of rights at issue in *United Pacific* stated as follows:

> At the present stage of proceedings we are uncertain as to whether or not the facts will show that either exclusionary endorsement would be applicable, but since it appears there is a likelihood that either or both would apply we are undertaking the further handling and defense, if any, of this case under a full and complete reservation of rights of all the terms and conditions of the policy, and United Pacific specifically reserves unto itself the right to withdraw from the defense at any time in the future it should become apparent that either exclusionary endorsement would apply.

*United Pacific*, 39 Or. App. at 876. The *United Pacific* court found that the insurer's reservation of rights was not ambiguous, and interpreted it "to reserve the right to withdraw from the defense as soon as it is determined that the exclusions apply." *Id.* at 878. The court reasoned:

PAGE 13- PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

BONAPARTE & BONAPARTE, LLP
620 SW MAIN STREET, NO. 310
PORTLAND, OR 97205
Telephone: (503) 242-0005
email: bob@bb-law.net

Such a determination requires thorough examination of the facts in hand. The letter simply states that the insurance company had not yet had time to examine the facts thoroughly and that it would defend until it had made such an examination. **We interpret the words "it should become apparent" to impose an objective standard on the company's right to withdraw. That is, the company could not withdraw just because it decided that the exclusions applied. Instead, it must have been objectively apparent that the exclusions applied.**

*Id.* (emphasis supplied). Thus, *United Pacific* stands for the proposition that a reservation of rights letter can create a presumption that withdrawal will be non-prejudicial *where the conditions implied by the articulation of the reservation are unambiguously satisfied. See id.* As discussed below, here Eagle West withdrew the defense it offered to its Insureds without first satisfying the conditions implied by its reservation of rights.

Eagle West's reservation of rights letter advised its Insureds that:

Eagle West has retained [an] attorney . . . to represent you pending a full review of coverage. . . .

Eagle West is and has been investigating the claims in the [Wasco County action] under a full reservation of rights. . . .

The purpose of this letter is to inform you that Eagle West expects to complete its investigation and coverage review in the near future. However, **Eagle West's investigation indicates that the [P]olicy potentially does not cover the claims against you in the [Wasco County action]**. **Eagle West, therefore, expressly reserves the right to withdraw, at any time in the future,** from any further participation in your representation or defense in the [Wasco County action].

Bonaparte Decl. I, Exh. D (emphasis supplied). Jacob submits that, in Eagle West's reservation of rights, the word "therefore" (considered in the context of Eagle West's assertion that it had already determined that the Policy "potentially" did not cover Jacob's claims against the Insureds) does the same work and generates the same inference as the phrase "it should become apparent" (considered in the context of the insurer's assertion of present "likelihood" that a coverage exclusion would apply) in *United Pacific*. That is, given that Eagle West undertook its

BONAPARTE & BONAPARTE, LLP
620 SW MAIN STREET, NO. 310
PORTLAND, OR 97205
Telephone: (503) 242-0005
email: bob@bb-law.net

Insureds' defense notwithstanding that it had already determined through investigation that the Policy "potentially d[id] not cover the claims," its statement that it was "therefore" reserving its right to withdraw in the future can only be interpreted as indicating that Eagle West would withdraw its defense in the event its investigation *established* that the Policy *in fact* did not cover the claims. Applying the reasoning of the *United Pacific* court, it follows that Eagle West subsequently withdrew its defense at peril of the possibility that, objectively, Jacob's claims against the Insureds were covered under the Policy. Because for the reasons discussed in Jacob's Motion for Partial Summary Judgment it is clear that Eagle West owed its Insureds the duties to defend and indemnify in connection with Jacob's claims against them, the conditions implied by Eagle West's reservation of rights were not in fact satisfied at the time it purported to repudiate its obligations under the Policy. In consequence, Eagle West was not entitled to withdraw its already-undertaken defense of its Insureds. *See United Pacific*, 39 Or. App. at 878.

Because Eagle West was not entitled to withdraw its defense, it owed its Insureds a duty of care in negotiating settlement of Jacob's claims at the time Jacob tendered his settlement offer. *See, e.g.*, *Safeco Ins. Co. of Am. v. Barnes*, 133 Or. App. 390, 395-396, 891 P.2d 682 (Or. App. 1995). Eagle West's argument is therefore without merit that its improper repudiation of its obligations under the Policy insulated it from liability on Jacob's excess judgment claim.

**IV.    As Established in Jacob's Motion for Partial Summary Judgment, the Policy's "Act or Omission of an 'Insured'" Coverage Exclusion is Inapplicable to Jacob's Claims Against the Insureds as a Matter of Oregon Law**

In further alternative to its standing argument, Eagle West finally resorts to the sole ground it asserted as its justification for repudiating its duties to defend and indemnify the Insureds in connection with Jacob's claims against them: the Policy's "Act or omission of an

PAGE 15- PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BONAPARTE & BONAPARTE, LLP
620 SW MAIN STREET, No. 310
PORTLAND, OR 97205
Telephone: (503) 242-0005
email: bob@bb-law.net

'insured'" exclusion. See Defendant's Motion for Summary Judgment at 23-28. For the reasons discussed in detail in Jacob's Motion for Partial Summary Judgment, Eagle West's argument is without merit. Rather than duplicate the operative legal analysis here, for the convenience of the court Jacob incorporates his argument in favor of partial summary judgment on the question of Eagle West's liability for breach of contract here, in opposition to Eagle West's dispositive motion. Accordingly, Jacob provides herein only a brief summary of the operative legal analysis and brief clarification of some of the issues Eagle West raises.

In summary, the Policy's "Act or omission of an 'insured'" exclusion applies to coverage for claims alleging bodily injury arising out of an act or omission of an insured "which was the basis for an 'insured' . . . pleading . . . nolo contendere to a charge of violating a criminal statute or law." Policy at 25. In addition, however, the Policy contains what is known as a *severability-of-interests* or *separate insurance* clause expressly providing that "This insurance applies separately to each 'insured.'" *Id.* at 28. Cainen, an insured under the Policy, pled nolo contendere to violation of criminal laws in connection with an act that caused Jacob to suffer bodily injury. However, as ably and persuasively reasoned by the California Supreme Court in *Minkler v. Safeco Ins. Co. of Am.*, 49 Cal. 4th 315, 110 Cal. Rptr. 3d 612, 232 P.3d 612 (2010) – among numerous other courts from jurisdictions all across the nation, some of which are cited in Jacob's Motion for Partial Summary Judgment – "a lay insured would reasonably anticipate that, under a policy containing [a separate insurance] clause, each insured's coverage would be analyzed separately, so that the intentional act of one insured would not, in and of itself, bar liability coverage of another insured for the latter's independent act that did not come within the terms of the exclusion." *Minkler*, 49 Cal. 4th at 319; *see also id.* at 323. Here, of course, there is no evidence that the Insureds – Cainen's parents, Gaige and Knight – ever faced criminal charges in

BONAPARTE & BONAPARTE, LLP
620 SW MAIN STREET, No. 310
PORTLAND, OR 97205
Telephone: (503) 242-0005
email: bob@bb-law.net

connection with the negligence alleged to have caused Jacob's injuries, so the acts of the Insureds are plainly outside the scope of the exclusion. Because the *Minkler* court's interpretation of a coverage exclusion premised on the intentional act of "an" insured in the context of an insurance policy containing a separate insurance clause is reasonable, there is at minimum an ambiguity as to whether the exclusion could bar coverage in connection with Jacob's claims. That ambiguity must, under long-established Oregon law, be resolved in favor of giving the Insureds the benefit of their bargain with their insurer and providing coverage. *See Stanford v. American Guaranty Life Ins. Co.*, 280 Or. 525, 527, 571 P.2d 909 (1977).

In his Motion for Partial Summary Judgment, Jacob anticipated that, in the context of this argument, Eagle West might seek to rely on two specified cases: *Ristine v. Hartford Ins. Co.*, 195 Or. App. 226, 233, 97 P.3d 1206, 1209 (2004), and *Allstate Ins. Co. v. Morgan*, 123 F. Supp. 3d 1266 (D. Or. 2015). Those are, in fact, the *only* two cases upon which Eagle West relies in favor of its proffered interpretation of the Policy's separate insurance clause. *See* Defendant's Motion for Summary Judgment at 25-26. As Jacob observed and explained in his Motion for Partial Summary Judgment, however, neither case can properly be construed as providing support for Eagle West's position.[3]

In *Ristine*, the Oregon Court of Appeals found that a separate insurance clause was without impact on interpretation of a policy exclusion barring coverage for bodily injury "arising out of sexual molestation." *Ristine*, 195 Or. App. at 228. The *Ristine* court expressly framed the operative question before it as "whether the exclusion provision of the insurance policy must be understood to refer only to claims that arise out of sexual molestation *by the insured*." *Id.* at 232 (emphasis original). In response to that question, the *Ristine* court reasoned:

---

[3] *NB*: Jacob clarifies his previous discussion of *Morgan infra*.

PAGE 17- PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**BONAPARTE & BONAPARTE, LLP**
620 SW Main Street, No. 310
Portland, OR 97205
Telephone: (503) 242-0005
email: bob@bb-law.net

> The short answer . . . is that the policy contains no wording that, reasonably construed, imposes such a limitation on the exclusion. The policy refers to claims arising out of sexual molestation without reference to any limitation as to who committed the act of molestation. Thus, the policy appears to state that the exclusion is based on the nature of the act, not the identity of the actor.

*Id.* It follows that *Ristine* is entirely inapposite here. The question presented here – like the question addressed persuasively by the *Minkler* court – is how a separate insurance clause impacts interpretation of a coverage exclusion premise on the intentional acts of "an" insured. The *Minkler* court would have reached the same result in *Ristine* that the *Ristine* court did, because the question raised here simply does not arise in connection with a coverage exclusion that contains no limitation as to whether it was "an" insured who committed the intentional act at issue. It follows that *Ristine* cannot be interpreted as providing any affirmative support for Eagle West's position.

As to *Morgan*, as a preliminary matter Jacob acknowledges that he slightly misconstrued the *Morgan* court's reasoning in his brief discussion thereof in his Motion for Partial Summary Judgment. Contrary to Jacob's assertion in the Motion for Partial Summary Judgment, in fact the exclusion at issue in *Morgan* barred coverage for bodily injury caused by "the intentional or criminal acts or omissions of. . . any insured person." *Morgan*, 123 F. Supp. 3d at 1276. Jacob apologizes to the court for his previous inadvertent mischaracterization.

However, Jacob notes, first, that this court is not bound by *Morgan* but rather must look to the Oregon courts to determine whether those courts' decisions provide guidance regarding the interpretation of separate insurance clauses in this context. Because the Oregon courts do not provide such guidance, this court may next look to the decisions of the Ninth Circuit to determine whether it has expressed any opinion as to how the Oregon courts would resolve the question. Because the Ninth Circuit likewise has not answered this question, the court should

PAGE 18- PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

make its own determination whether there is at minimum an ambiguity as to how a coverage exclusion premised on the intentional acts of "an" insured should be interpreted in light of a separate insurance clause. As discussed above, Jacob submits that the *Minkler* court appropriately analyzed and resolved the ambiguity question and that this court should follow its reasoning.

Second, as discussed in Jacob's Motion for Partial Summary Judgment, the District of Oregon reached a result contrary to *Morgan* in *Country Mut. Ins. Co. v. Larson*, No. 08-6154-TC, 2010 U.S. Dist. LEXIS 27043 (D. Or. Feb. 24, 2010). In *Larson*, the court was called upon to determine whether as a matter of Oregon law "a criminal acts exclusion applies to a negligence claim against a parent whose child is convicted of a crime." *Larson*, 2010 U.S. Dist. LEXIS 27043 at *7. The *Larson* court reasoned that "[r]easonable homeowners would certainly not contemplate that by extending their homeowners' coverage to include their minor children as additional insureds they are actually narrowing their own coverage should they be sued for negligence in failing to prevent the transgressions of the child," and on that basis concluded that although a criminal acts exclusion would bar coverage to the minor child, it would not relieve the insurer of its duty to defend and indemnify the insured parent. *Id.* at *12.

The *Morgan* court discussed *Larson* and expressly opined that the two decisions were "not inconsistent." *Morgan*, 123 F. Supp. 3d at 1280. The *Morgan* court's grounds for reaching that conclusion are somewhat obscure, but appear to inhere chiefly in questions of privity and issue preclusion, and to a lesser extent in distinctions between the respective coverage exclusions' use and placement of the phrase "any insured." *Id.* In any event, Jacob submits that to the extent the *Larson* and *Morgan* decisions (neither of which constitutes precedent this court is bound to follow) are in tension with one another, that tension strongly supports the conclusion

PAGE 19- PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

that there is at least an ambiguity in the application of separate insurance clauses to coverage exclusions premised on the intentional acts of "an" insured. *See, e.g., St. Paul Fire & Marine Ins. Co. v. McCormick & Baxter Creosoting Co.*, 324 Or 184, 216, 923 P.2d 1200 (1996) (conflicting decisions "simply help to demonstrate that the [policy language] is ambiguous" and "[a]ccordingly," the Oregon courts "construe the policy against the drafter").

Other than as clarified above, Jacob relies on his argument as set forth in his Motion for Partial Summary Judgment to establish that the Policy's "Act or omission of an 'insured'" exclusion is inapplicable to the claims he brought against the Insureds in the Wasco County action.

## **CONCLUSION**

For the reasons discussed above, plaintiff Jacob Wakeman respectfully requests that the court deny Eagle West's Motion for Summary Judgment in its entirety.

Dated this 7th day of September, 2021.

BONAPARTE & BONAPARTE, LLP

By:/s/ *Robert E.L. Bonaparte*
    Robert E.L. Bonaparte, OSB No. 883411
    Of Attorneys for Plaintiff Jacob Wakeman
    by and through his guardian *ad litem*

PAGE 20- PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT