IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JACOB WAKEMAN, by and through his guardian ad litem KRISTINA ENSBURY**,<br><br>    Plaintiff,<br><br>    v.<br><br>**EAGLE WEST INSURANCE COMPANY**,<br><br>    Defendant. | Case No. 3:21-cv-200-SB<br><br>**OPINION AND ORDER** |

Stephen D. Leggatt and Robert E.L. Bonaparte, BONAPARTE & BONAPARTE, LLP, One SW Columbia St., Ste. 460, Portland, OR 97204. Of Attorneys for Plaintiff.

Gary Sparling, Misty Edmunson, and Cristin A. Cavanaugh, SOHA & LANG, P.S. 1325 Fourth Ave., Ste. 2000, Seattle, WA 98101-2570. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

This case arises out of injuries sustained by Jacob Wakeman (Wakeman), when he was accidentally shot by his friend Cainen Gaige (Cainen), in the home of Cainen's parents, Justin Gaige (Gaige) and Andreua Knight (Knight). At the time of the shooting, both Wakeman and Cainen were minors. Cainen was arrested and charged with a variety of offenses related to the incident, ultimately entering a plea of nolo contendere to many of those charges. Plaintiff, by and through his guardian ad litem Kristina Ensbury (Ensbury), brings this action against Gaige and

Knight's insurer, Eagle West Insurance Company (Eagle West). Wakeman alleges claims of breach of contract and bad faith failure to settle. United States Magistrate Judge Stacie F. Beckerman issued Findings and Recommendation, recommending that the Court grant Eagle West's motion for summary judgment (ECF 15), deny as moot Wakeman's motion for partial summary judgment (ECF 17), and deny Plaintiff's amended motion for partial summary judgment (ECF 23-1). Wakeman timely objected.

## STANDARDS

Under the Federal Magistrates Act (Act), the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). If a party objects to a magistrate judge's findings and recommendations, "the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*; Fed. R. Civ. P. 72(b)(3).

For those portions of a magistrate judge's findings and recommendations to which neither party has objected, the Act does not prescribe any standard of review. *See Thomas v. Arn*, 474 U.S. 140, 152 (1985) ("There is no indication that Congress, in enacting [the Act], intended to require a district judge to review a magistrate's report to which no objections are filed."); *United States. v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (holding that the court must review *de novo* magistrate judge's findings and recommendations if objection is made, "but not otherwise"). Although in the absence of objections no review is required, the Act "does not preclude further review by the district judge[] *sua sponte* . . . under a *de novo* or any other standard." *Thomas*, 474 U.S. at 154. Indeed, the Advisory Committee Notes to Fed. R. Civ. P. 72(b) recommend that "[w]hen no timely objection is filed," the Court review the magistrate judge's recommendations for "clear error on the face of the record."

PAGE 2 – OPINION AND ORDER

**BACKGROUND**

The incident giving rise to this lawsuit occurred on December 9, 2017. On that day, Wakeman visited his friend Cainen in his home, owned by Cainen's parents, Gaige and Knight. Wakeman Decl. ¶ 4 (ECF 18). During the visit, Cainen pointed a loaded AR-15 rifle at Wakeman and jabbed him with it, at which point the rifle accidentally discharged, resulting in Wakeman's hospitalization and causing him severe injuries. *Id.* ¶¶ 5-11. Cainen was later arrested and charged with first-degree assault, second-degree assault, unlawful use of a weapon, tampering with a witness, first-degree theft, and menacing. Edmundson Decl. Ex. Q (ECF 16 at 156-160). Cainen pleaded nolo contendere to all charges except first-degree assault, which the state court dismissed. *Id.* Cainen received a sentence of seventy-six months in prison. *Id.*

In December 2018, Wakeman's guardian ad litem, Ensbury, filed suit against Gaige, Knight, and Cainen in Wasco County Court, asserting claims of negligence, assault, and battery. Am. Bonaparte Decl. Ex. B (ECF 23-3 at 62-69). Gaige and Knight tendered Wakeman's complaint to their homeowner's insurance provider, Eagle West. In a letter dated February 8, 2019, Eagle West initially agreed to defend under a reservation of rights. Am. Bonaparte Decl. Ex. D (ECF 23-3 at 73-79). Within a month, however, on March 7, 2019, Eagle West informed Gaige and Knight that it had determined that Gaige and Knight's policy did not cover the claims asserted in the Wasco County lawsuit because the policy "excludes coverage for bodily injury arising out of an insured's act or omission which was the basis for an insured pleading guilty to a criminal charge." Am. Bonaparte Decl. Ex. E at 1 (ECF 23-3 at 80). Eagle West also told Gaige and Knight that, as of April 5, 2019, it would stop paying the attorneys whom Eagle West had retained to defend the case. *Id.* at 2 (ECF 23-3 at 81). On April 5, 2019, Wakeman, through counsel, contacted Eagle West and offered to settle for policy limits. Am. Bonaparte Decl. Ex. F (ECF 23-3 at 86-107). Eagle West responded on May 1, 2019, informing Wakeman that Eagle

PAGE 3 – OPINION AND ORDER

West had denied both defense and coverage responsibilities and thus declined to settle. Am. Bonaparte Decl. Ex. I (ECF 23-3 at 116-20).

On July 21, 2020, Ensbury, Gaige, and Knight signed a "Covenant Not to Execute and Assignment of Legal Claims." Am. Bonaparte Decl. Ex. K (ECF 23-3 at 130-31). Under this covenant, Gaige and Knight assigned their claims against Eagle West to Wakeman, in exchange for an agreement not to execute a stipulated judgment that the parties had not yet filed in the Wasco County lawsuit. *Id.* The stipulated judgment was filed on July 23, 2019. Am. Bonaparte Decl. Ex. K (ECF 23-3 at 136). On July 24, 2020, Wasco County Circuit Court signed and entered the stipulated judgment against Gaige and Knight, awarding Wakeman $188,000 in economic damages and $2,800,000 in non-economic damages. Am. Bonaparte Decl. Ex. L (ECF 32-3 at 132-37).

On February 5, 2021, Wakeman filed this lawsuit against Eagle West, alleging breach of contract and bad faith failure to settle. ECF 1. Both parties moved for summary judgment. In its motion, Eagle West argues: (1) Gaige and Knight's homeowner's insurance policy contained an anti-assignment clause that precludes Wakeman's claims; (b) Wakeman's claim for breach of duty to settle fails because Eagle West owed no fiduciary duty at the time of settlement; and (3) Wakeman's claim for breach of contract fails because Gaige and Knight's insurance policy does not cover the underlying incident based on the "acts or omission of an insured" exclusion (the Exclusion). ECF 15. Eagle West also argued that Wakeman's fiduciary duty claim was barred because the assignment was signed before judgment was entered. *Id.* In his cross-motion, Wakeman argues that the underlying incident is covered by Gaige and Knight's homeowner's policy and that the assignment of claims was valid. ECF 17.

PAGE 4 – OPINION AND ORDER

One day after both parties moved for summary judgment, Ensbury, Knight, and Gaige signed an "Agreement to Amend," which amended the July 21, 2020 assignment of legal claims. Am. Bonaparte Decl. Ex. M (ECF 23-3 at 138-40). The amendment stated that, out of "an abundance of caution," Ensbury, Gaige, and Knight agreed to void the initial assignment "without terminating or otherwise disturbing the covenant not to execute," and that the assignment was now effective as of July 25, 2020—the day *after* the Wasco County court entered the stipulated judgment. *Id.* Plaintiff then filed an amended motion for partial summary judgment to reflect the changes in the date of the assignment. ECF 23-1.

Judge Beckerman considered the parties' cross-motions and concluded that Wakeman had standing to assert the assigned claims against Eagle West. She also concluded, however, that Gaige and Knight's policy barred Wakeman's breach of contract claim based on the Exclusion and, accordingly, Eagle West had no fiduciary duty to settle the Wasco County lawsuit. Judge Beckerman recommended that the Court grant Eagle West's motion, deny as moot Wakeman's original motion, and deny Wakeman's amended motion. Wakeman timely objected, triggering de novo review by the Court.

## DISCUSSION

Under Oregon law, interpreting an insurance policy is a matter of law, with the primary objective being to determine the intent of the parties. *Hoffman Constr. Co. of Alaska v. Fred S. James & Co. of Or.*, 313 Or. 464, 469 (1992). Determining the parties' intent is a three-step process. First, the Court examines the text of the policy to determine whether it is ambiguous— that is, susceptible to more than one reasonable interpretation. *See Hoffman*, 313 Or. at 469-70. If there is no ambiguity, the policy is interpreted and applied according to its plain meaning. *See Andres v. Am. Standard Ins. Co. of Wis.*, 205 Or. App. 419, 423 (2006); *see also Hoffman*, 313 Or. at 469-70. If the policy's text is ambiguous, the second step is to examine the disputed terms

PAGE 5 – OPINION AND ORDER

in the broader context of the policy as a whole. *Andres*, 205 Or. App. at 424. "If—and only if—the ambiguity persists, we construe the policy against the drafter, in this case, defendant." *Id.*

The Exclusion at issue here excludes from coverage the following:

> "Bodily injury" . . . arising out of an act or omission of an "insured," which was the basis for an "insured" either having been found guilty, or pleading guilty, or nolo contendere to a charge of violating a criminal statute or law[.]

Edmundson Decl. at 38 (ECF 16). The policy also contains the following definition:

> "Insured" means:
>  a. You and residents of your household who are:
>   (1) Your relatives[.] . . .
> Under both Sections I and II [of the policy], when the word an immediately precedes the word "insured," the words an "insured" together mean one or more "insureds."

*Id.* at 15.[1] The policy also contains the following severability provision:

> This insurance applies separately to each "insured." This condition will not increase our limit of liability for any one "occurrence."

*Id.* at 41. Eagle West argues that the Exclusion bars coverage for injuries caused by conduct resulting in "one or more" insureds being found guilty (or pleading guilty or nolo contendere) to criminal charges. Wakeman responds that the severability provision renders the Exclusion ambiguous, such that the policy must be construed against the drafter and in favor of coverage.

Courts throughout the nation do not consistently interpret similar insurance policy exclusions when the policy also contains a severability clause. *See generally* Johnny Parker, *Reconciling the Irreconcilable Conflict in Insurance Severability of Interests Clause Interpretation*, 20 CONN. INS. L.J. 61 (2013) (describing three different interpretive

---

[1] In the quoted policy text, the first instance of the word "an" is not in quotation marks, and the phrase "an 'insured'" contains quotation marks only around the word "insured." This lack of grammatical precision does not further Eagle West's argument that its policy is unambiguous.

PAGE 6 – OPINION AND ORDER

methodologies that different courts in the United States apply to exclusions in insurance policies that also contain severability clauses). These interpretive differences depend largely on three factors: (1) whether the presence of a severability clause renders an exclusion ambiguous; (2) whether the interpreting court considers the phrases "an insured" and "any insured" in an exclusion to be synonymous; and (3) whether the text of the exclusion at issue uses the phrase "an insured" or "any insured." Some courts "construe an insurance policy exclusion that is couched in the words 'an insured' or 'any insured' to apply to all the insureds and additionally hold that a severability clause has no impact on that exclusion." *Id.* at 68 (collecting cases and describing what the author calls "Methodology No. 1"). Other courts hold that "while the terms 'an insured' and 'any insured' are synonymous, the presence of a severability clause in the policy renders the exclusion ambiguous." *Id.* at 71 (describing "Methodology No. 2").

The final interpretive methodology distinguishes between exclusions referring to "an insured" versus "any insured." Some courts have concluded that the applicability of an exclusion referring to "an insured" "should be determined separately as to each insured," whereas the phrase "any insured" "operates as a bar to coverage for any claim of any insured, even if the policy contains a severability clause." *Id.* at 77-78 (describing "Methodology No. 3a"). Finally, other courts view the presence of a severability clause as rendering the phrase "an insured" as ambiguous, and thus construe those policies in favor of coverage, but hold that the phrase "any insured" is not rendered ambiguous by a severability clause. *Id.* at 80-83 (describing "Methodology No. 3b"). Thus, when there is a severability clause, courts applying Methodology 1 find the exclusion clause to be unambiguous, regardless of whether the words "an insured" or "any insured" are used, and courts applying Methodology 3b find the exclusion clause unambiguous only if the words "any insured" are used. Courts applying Methodology 2

always find the exclusion clause ambiguous when there is a severability clause, and courts applying Methodology 3 a find the exclusion clause ambiguous when there is a severability clause only if the words "an insured" are used instead of the words "any insured."[2]

In the policy at issue, the Exclusion uses the words "an insured." The policy also defines the words "an insured" to mean "one or more 'insureds.'" Oregon law directs that when the text of a policy includes definitions, courts "must . . . construe the policy in accordance with any such definitions." *Andres*, 205 Or. App. at 423. Although Oregon courts do not appear to have addressed this precise issues, other courts in the nation interpreting exclusions and severability provisions in insurance policies have concluded that "one or more" means the same as "any," and have thus read "an insured" to mean "any insured," when the policy includes such a definition. *See, e.g.*, *Farmers All. Mut. Ins. Co. v. Willingham*, 2009 WL 3429768, at *6 (N.D. Okla. Oct. 20, 2009) ("[T]his Court finds that 'one or more insureds' is not ambiguous and means the same as 'any insured.' 'One or more' is another way of saying 'any.'"); *see also Strouss v. Fireman's Fund Ins. Co.*, 2005 WL 418036, at *6 n.3 (E.D. Pa. Feb. 22, 2005) ("[I]ndeed, the very definition of 'any' is 'one or more,' thereby justifying this Court's reliance on cases interpreting the language of 'any insured' in an insurance policy to resolve this dispute." (citing Merriam-Webster's Collegiate Dictionary, at 53 (10th ed. 2001)). If viewed in isolation, this supports the position of Eagle West.

---

[2] As Professor Parker describes, Methodology 3b differs from Methodology 3a "only in its reliance on the principle of ambiguity to achieve coverage." *Reconciling the Irreconcilable Conflict in Insurance Severability of Interests Clause Interpretation*, 20 CONN. INS. L.J. at 80. Under Methodology 3a, courts conclude that a severability clause does not create ambiguity, but under Methodology 3b, courts find the words "an insured" to be ambiguous when there is a severability clause.

PAGE 8 – OPINION AND ORDER

When viewed in the light of the differing decisions around the nation, however, the conclusion is different. As discussed by Judge Beckerman and summarized in Professor Parker's law review article, there are many cases around the nation falling into the different interpretive categories. To use Professor Parker's classification model, Judge Beckerman appears to follow Methodology 1. *See* ECF 40 at 26-27 (citing with favor *EMASCO Insurance Co. v. Diedrich*, 394 F.3d 1091, 1097 (8th Cir. 2005), and concluding that "the policy's severability clause here does not create any ambiguity about the scope of the act or omission of an insured exclusion"). The Oregon appellate courts, however, have not selected a specific interpretative methodology.

Moreover, on de novo review, the undersigned finds it significant that there are many divergent judicial decisions on the specific issue raised in the cross-motions for summary judgment as well as precedent from the Oregon Supreme Court stating that "conflicting judicial decisions as to the proper construction of a clause in an insurance policy are evidence, although not necessarily conclusive, that the clause is ambiguous." *Jones v. Ins. Co. of N. Am.*, 264 Or. 276, 282 n.1 (1972) (citations omitted); *see also St. Paul Fire & Marine Ins. Co. v. McCormick & Baxter Creosoting Co.*, 324 Or. 184, 215 (1996) ("'The very fact that a number of courts have reached conflicting conclusions as to the interpretation of a certain provision is frequently considered evidence of ambiguity.'" (quoting John Alan Appleman and Jean Appleman, 13 *Insurance Law and Practice*, § 7404 (1976)). The lack of clarity in the policy at issue, coupled with the breadth of conflicting judicial interpretations from throughout the nation, leads this Court to conclude that an Oregon court likely would find the policy text ambiguous and thus construe it against the insurer. *See Stanford v. Am. Guar. Life Ins. Co.*, 280 Or. 525, 527 (1977) ("[A]ny ambiguity in an exclusionary clause is strictly construed against the insurer."

(citing *United Pac. Ins. v. Truck Ins. Exch.*, 273 Or. 283, 293 (1975))).[3] Put differently, the severability clause, read alongside the Exclusion, creates an ambiguity, even considering the policy's definitions, such that the Exclusion must be construed against the insurer. Thus, the Court grants in part Wakeman's amended motion for partial summary judgment (ECF 23-1) with respect to Wakeman's claim of breach of contract. This is an ambiguity that the insurer can resolve with greater textual precision, and under Oregon law that requires interpretation in the light most favorable to the insured. Applying that conclusion in light of the severability clause, because neither Gaige nor Knight have been convicted of a crime, the Exclusion does not apply to them as named insureds under the policy.

As for the timing of Gaige and Knight's assignment of their claims against Eagle West, the Court agrees with Judge Beckerman's analysis that the policy should be construed against Eagle West to permit Gaige and Knight to assign their claims to Wakeman. Thus, the Court adopts that portion of the Findings and Recommendation. ECF 40 at 6-17.

---

[3] As noted, it is not necessary to determine here which interpretive methodology the Oregon Supreme Court likely would adopt, were it to consider that question. Rather, it is sufficient to conclude that an Oregon court likely would consider the Exemption ambiguous in the presence of a severability clause and thus construe the policy against the drafter. This conclusion would follow from an application of Methodology 2. It also could follow from an application of Methodology 3b with a finding that the words "an insured" are ambiguous in the presence of a severability clause. Many courts around the nation have reached one or the other of these two conclusions. *See, e.g.*, *Brumley v. Lee*, 265 Kan. 810, 814 (1998) ("The words 'an' and 'any' are inherently indefinite and ambiguous."); *see also Am. Nat. Fire Ins. Co. v. Est. of Fournelle*, 472 N.W.2d 292, 294 (Minn. 1991) ("[T]he language in the policy is, at best, ambiguous."); *see also Safeco Ins. Co. v. Fed. Ins. Co.*, 2007 WL 455690, at *4 (Ohio Ct. App. December 28, 2007) (holding that the severability clause "language created an ambiguity when read in conjunction with the foregoing exclusions"); *see also Minkler v. Safeco Ins. Co. of Am.*, 49 Cal. 4th 315, 324 (2010) ("[T]he severability clause . . . , when read in conjunction with the exclusion for the intentional acts of 'an insured,' created an ambiguity as to whether a coverage exclusion for an intentional act or injury by one insured extended to all other insureds under the policies.").

Regarding the timing of the assignment, because Judge Beckerman concluded that the Exclusion applied, she assumed without deciding that the amended assignment satisfied the requirement under Oregon law that "the excess judgment was in place before the amended assignment occurred." *Id.* at 17 n.7 (citing *Brownstone Homes Condo. Ass'n v. Brownstone Forest Heights, LLC*, 358 Or. 223 (2015)). The parties do not dispute that Oregon law requires that excess judgment claims arising out of an insurer's failure to settle claims against its insured must be assigned *after* the issuance of a judgment against the insured. *Brownstone*, 358 Or. at 236. The parties dispute only whether Wakeman's voiding of the original assignment cures the defect in timing. Eagle West argues that because an assignment was in place before the entry of judgment, Wakeman cannot cure the defect in timing. Eagle West's argument is not persuasive. Eagle West cites no authority suggesting that Wakeman cannot cure this mistake in timing but rather argues only summarily that, because Oregon law prescribes the proper timing for an assignment, the mere existence of the original assignment prevents any future assignment from taking effect. The Court does not agree with Eagle West on this point, and finds that Wakeman cured the defect in timing by voiding the original assignment and entering into a new assignment. The Court also finds no unfair prejudice to Eagle West in this result.

Finally, based on the conclusion that the Exclusion is ambiguous considering the breadth of different judicial interpretations of similar exclusions when joined by a severability clause, Wakeman is not entitled to summary judgment on his claim of bad faith failure to settle. The fact that reasonable courts differ on the interpretation of these policies suggest that a failure to settle based on those differing interpretations might not necessarily be in bad faith. Eagle West, however, moved for summary judgment on Wakeman's claim of bad faith failure to settle only on the ground that it owed no fiduciary duty at the time of settlement. Accordingly, summary

judgment in favor of Eagle West on that claim is not warranted. Notwithstanding the Court's conclusion that the policy is ambiguous, a genuine issue of material fact remains as to whether Eagle West's failure to settle was done in bad faith. Thus, regarding Wakeman's bad faith claim, the Court denies both Wakeman's amended motion for summary judgment (ECF 23-1) and Defendant's motion for summary judgment (ECF 15) on that claim.

## CONCLUSION

The Court ADOPTS IN PART Judge Beckerman's Findings and Recommendation, ECF 40. The Court DENIES Defendant's Motion for Summary Judgment (ECF 15), DENIES AS MOOT Plaintiff's Motion for Partial Summary Judgment (ECF 17), and GRANTS IN PART Plaintiff's Amended Motion for Partial Summary Judgment (ECF 23-1) with respect to Plaintiff's breach of contract claim. The Court DENIES Plaintiff's Amended Motion for Partial Summary Judgment (ECF 23-1) with respect to Plaintiff's bad faith failure to settle claim.

**IT IS SO ORDERED**.

DATED this 9th day of June, 2022.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge