**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| **JACOB WAKEMAN, by and through his guardian ad litem KRISTINA ENSBURY**, | Case No. 3:21-cv-200-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **EAGLE WEST INSURANCE COMPANY**, | |
| Defendant. | |

Robert E.L. Bonaparte and Stephen Leggatt, BONAPARTE & BONAPARTE, One SW Columbia Street, Suite 460, Portland, OR 97204. Of Attorneys for Plaintiff.

Gary A. Sparling, Misty A. Edmundson, and Cristin Cavanaugh, SOHA & LANG, 1325 Fourth Avenue, Suite 2000, Seattle, WA 98101. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Defendant Eagle West Insurance Company (Eagle West) seeks reconsideration of this Court's Opinion and Order dated June 9, 2022, denying Eagle West's motion for summary judgment and granting in part the amended motion for partial summary judgment filed by Plaintiff Jacob Wakeman (Wakeman). In the alternative, Eagle West seeks: (a) leave to file a motion for interlocutory review under 28 U.S.C. § 1292(b); or (b) certification of questions to the Oregon Supreme Court under Oregon Revised Statutes (Or. Rev. Stat.) §§ 28.200, *et seq*.

PAGE 1 – OPINION AND ORDER

**STANDARDS**

**A.  Motion for Reconsideration**

Rule 60(b) of the Federal Rules of Civil Procedure governs reconsideration of "a final judgment, order, or proceeding" of the district court. That rule allows a district court to relieve a party from a final judgment, order, or proceeding for the following reasons: "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence . . . ; (3) fraud . . . by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied . . . ; or (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b). A motion under Rule 60(b) must be made within a reasonable time and, under subsections (1), (2), and (3), "no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1). The party making the Rule 60(b) motion bears the burden of proof. *See Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 383 (1992).

Reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2020) (cleaned up); *see also Shalit v. Coppe*, 182 F.3d 1124, 1132 (9th Cir. 1999) (noting that "reconsideration is appropriate only in very limited circumstances"). "[M]otions for reconsideration are not the proper vehicles for rehashing old arguments and are not intended to give an unhappy litigant one additional chance to sway the judge." *Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615, 670 (D. Nev. 2013) (alteration in original) (quoting *Cheffins v. Stewart*, 2011 WL 1233378, at *1 (D. Nev. Mar. 29, 2011)). A motion for reconsideration also "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003); *see also Shalit*, 182 F.3d at 1132 (finding no abuse of discretion by district court in denying a motion for reconsideration when movant offered no reason for failure to provide the

evidence when litigating the underlying motion); *Rosenfeld v. U.S. Dep't of Justice*, 57 F.3d 803, 811 (9th Cir. 1995) ("The district court did not abuse its discretion in declining to consider an argument raised for the first time on reconsideration without a good excuse."); *Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. California*, 649 F. Supp. 2d 1063, 1069 (E.D. Cal. 2009) ("In the absence of new evidence or a change in the law, a party may not use a motion for reconsideration to raise arguments or present new evidence for the first time when it could reasonably have been raised earlier in the litigation." (citing *Carroll*, 342 F.3d 934 at 945)).

**B. Interlocutory Appeal**

"Under 28 U.S.C. § 1292(b) parties may take an interlocutory appeal when 'exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'" *ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1130 (9th Cir. 2022) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978)). A district court may certify an order for interlocutory appeal when the district court finds "that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see also ICTSI*, 22 F.4th at 1130.

"A controlling question of law must be one of law—not fact—and its resolution must 'materially affect the outcome of litigation in the district court.'" *Id.* (quoting *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982)). A court may find substantial ground for difference of opinion when "novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions." *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011). "For example, this prong is satisfied if 'the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise

under foreign law, or if novel and difficult questions of first impression are presented.'"
*ICTSI*, 22 F.4th at 1130 (quoting *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010)).
The district court need not, however, "await development of contradictory precedent before
concluding that the question presents a substantial ground for difference of opinion." *Id.*
at 1130-31 (cleaned up). "Finally, the 'materially advance' prong is satisfied when the resolution
of the question 'may appreciably shorten the time, effort, or expense of conducting' the district
court proceedings." *Id.* at 1131 (quoting *In re Cement*, 673 F.2d at 1027).

**C.  Certification to the Oregon Supreme Court**

Certification of questions to the Oregon Supreme Court is governed by Or. Rev. Stat.
§§ 28.200, *et seq.* (Certification Act). These statutory provisions are Oregon's adopted form of
the Uniform Certification of Questions of Law Act. *See* Or. Rev. Stat. § 28.255; *F.D.I.C. v.
Smith*, 328 Or. 420, 423 (1999). Because Oregon's Certification Act is based on a uniform act,
commentary relating to the uniform act and other cases interpreting similar statutes based on the
uniform act may be instructive. *See W. Helicopter Servs., Inc. v. Rogerson Aircraft Corp.*, 311
Or. 361, 363 n.2 (1991) ("Because our statute is based on a uniform law there exist[s] useful
commentary on the Uniform Act, instructive case law from other uniform-law jurisdictions, and
informative academic treatment of the subject.").

The primary statutory provision relating to certification establishes that the Oregon
Supreme Court may answers questions of law certified to it from certain courts, including this
United States District Court, "if there are involved in any proceedings before it questions of law
of this state which may be determinative of the cause then pending in the certifying court and as
to which it appears to the certifying court there is no controlling precedent in the decisions of the
Supreme Court and the intermediate appellate courts of this state." Or. Rev. Stat. § 28.200.
Oregon's Certification Act also requires that the certifying court set forth the questions to be

answered and a statement of all facts relevant to the questions and "showing fully the nature of the controversy." Or. Rev. Stat. § 28.210. "The decision to certify a question to a state supreme court rests in the 'sound discretion' of the district court." *Eckard Brandes, Inc. v. Riley*, 338 F.3d 1082, 1087 (9th Cir. 2003) (quoting *Louie v. United States*, 776 F.2d 819, 824 (9th Cir. 1985). "Even where state law is unclear, resort to the certification process is not obligatory." *Riordan v. State Farm Mut. Auto. Ins. Co.*, 589 F.3d 999, 1009 (9th Cir. 2009) (citing *Lehman Bros. v. Schein*, 416 U.S. 386, 390 (1974)).

The certification process serves many purposes. It originally arose out of cases where abstention might be appropriate, but in lieu of abstention courts could certify a question to the state court. *See, e.g.*, Wright & Miller, *Certification to State Court*, 17A Fed. Prac. & Proc. Juris. § 4248 (3d ed. 2022) (hereinafter "Wright & Miller"). In those circumstances, the U.S. Supreme Court emphasized that certification to state supreme courts can "save time, energy, and resources and helps build a cooperative judicial federalism." *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974). Another purpose of certifying a question to a state supreme court "is to provide foreign courts with the benefit of [the state Supreme Court's] determination of [state] law." *Abrams v. W. Virginia Racing Comm'n*, 164 W. Va. 315, 318, 263 S.E.2d 103, 106 (1980). When that benefit is not needed or necessary, however, certification is not appropriate. *See id.*

"Where certification is available, it is not a device to be used indiscriminately." Wright & Miller, § 4248. "Questions ought not be certified if the answer is reasonably clear." *Id*; *see also Russell v. Salve Regina Coll.*, 938 F.2d 315, 318 (1st Cir. 1991) (noting that the fact that the state courts had never addressed the issue "reflects only the fact that the court apparently has not been faced squarely with the issue" and denying certification because the First Circuit was "convince[d]" about how the state court would rule on the issue); *White v. Celotex Corp.*, 907

F.2d 104, 106 (9th Cir. 1990) (finding that it was "highly unlikely that the Supreme Court of

Arizona" would adopt the proposed legal theory and concluding that "[t]he question is not close

and so the district court did not err in exercising its discretion to deny certification"); *Bi-Rite*

*Enters., Inc. v. Bruce Miner Co.*, 757 F.2d 440, 443 n.3 (1st Cir. 1985) ("Although

Massachusetts allows certification of difficult questions of state law to the Supreme Judicial

Court, it is inappropriate for a federal court to use such a procedure when the course state courts

would take is reasonably clear."); *Marston v. Red River Levee & Drainage Dist.*, 632 F.2d 466,

468 n.3 (5th Cir. 1980) (holding, in a matter of first impression in constructing a state statute:

"For several reasons, we deny the motion to certify to the Louisiana Supreme Court. First, this

cause is long in the tooth and should be disposed of if that can be done by us with confidence.

Second, the law involved seems clear on its face, and we are relatively certain of its meaning.");

*State of Fla. ex rel. Shevin v. Exxon Corp.*, 526 F.2d 266, 275-76 (5th Cir. 1976) (declining to

certify a question because the court did not find the question to be "an extremely close one" and

because certification would cause further delay in a case that had already been litigated for two

and one-half years with many preliminary issues still being decided).

## BACKGROUND

This Court previously stated the background of this case in its Opinion and Order

(ECF 44) adopting in part Magistrate Judge Stacie F. Beckerman's Findings and

Recommendation (ECF 40). In summary, the incident giving rise to this lawsuit occurred on

December 9, 2017. On that day, Wakeman visited his friend Cainen Gaige (Cainen) in his home,

owned by Cainen's parents, Justin Gaige (Gaige) and Andreua Knight (Knight). Wakeman Decl.

¶ 4 (ECF 18). During the visit, Cainen pointed a loaded AR-15 rifle at Wakeman and jabbed him

with it, at which point the rifle accidentally discharged, resulting in Wakeman's hospitalization

and causing him severe injuries. *Id.* ¶¶ 5-11. Cainen was later arrested, criminally charged, and

convicted of various offenses related to that incident. Edmundson Decl. Ex. Q (ECF 16 at 156-160).

Wakeman's guardian ad litem, Kristina Ensbury (Ensbury), filed suit against Gaige, Knight, and Cainen in Wasco County Court, asserting claims of negligence, assault, and battery. Am. Bonaparte Decl. Ex. B (ECF 23-3 at 62-69). Gaige and Knight tendered Wakeman's complaint to their homeowner's insurance provider, Eagle West. The history of this case is stated in greater detail in this Court's earlier Opinion and Order (ECF 44), but, as relevant to the pending motion for reconsideration, Eagle West initially agreed to defend Gaige and Knight, and then withdrew on the ground that Gaige and Knight's policy did not cover the claims asserted in the Wasco County lawsuit because the policy "excludes coverage for bodily injury arising out of an insured's act or omission which was the basis for an insured pleading guilty to a criminal charge." Am. Bonaparte Decl. Ex. E at 1 (ECF 23-3 at 80). When contacted by Wakeman with a settlement offer, Eagle West informed Wakeman that it had denied both defense and coverage responsibilities. Am. Bonaparte Decl. Ex. I (ECF 23-3 at 116-20).

After Eagle West's withdrawal, Ensbury, Gaige, and Knight signed a "Covenant Not to Execute and Assignment of Legal Claims," under which Gaige and Knight assigned their claims against Eagle West to Wakeman, in exchange for an agreement not to execute a stipulated judgment that the parties had not yet filed in the Wasco County lawsuit. Am. Bonaparte Decl. Ex. K (ECF 23-3 at 130-31). The stipulated judgment was filed on July 23, 2019. Am. Bonaparte Decl. Ex. K (ECF 23-3 at 136). On July 24, 2020, Wasco County Circuit Court signed and entered the stipulated judgment against Gaige and Knight, awarding Wakeman $188,000 in economic damages and $2,800,000 in non-economic damages. Am. Bonaparte Decl. Ex. L (ECF 23-3 at 132-37).

On February 5, 2021, Wakeman filed this lawsuit against Eagle West, alleging breach of insurance contract and bad faith failure to settle. ECF 1. Both parties moved for summary judgment. One day after both parties filed their respective summary judgment motions, Ensbury, Knight, and Gaige signed an "Agreement to Amend," which amended the July 21, 2020, assignment of legal claims. Am. Bonaparte Decl. Ex. M (ECF 23-3 at 138-40). The amendment stated that, out of "an abundance of caution," Ensbury, Gaige, and Knight agreed to void the initial assignment "without terminating or otherwise disturbing the covenant not to execute," and that the assignment was now effective as of July 25, 2020—the day *after* the Wasco County court entered the stipulated judgment. *Id.*; *see also* Am. Bonaparte Decl. Ex. L (ECF 23-3 at 132-37). Plaintiff then filed an amended motion for partial summary judgment that reflected the changes in the date of the assignment. ECF 23-1.

As relevant here, Judge Beckerman recommended that the Court grant Eagle West's motion and deny Wakeman's cross-motion. ECF 40. Wakeman timely objected, and this Court adopted in part and declined to adopt in part Judge Beckerman's Findings and Recommendation. ECF 44. Eagle West now moves for reconsideration or, in the alternative, certification of an order for interlocutory appeal or certification of questions to the Oregon Supreme Court.

## DISCUSSION

Eagle West moves for reconsideration pursuant to Rule 60(b)(6) on several grounds.[1] First, Eagle West contends that this Court misapplied the framework for interpreting insurance

---

[1] Eagle West purports to move for reconsideration pursuant to Rule 50(b), Rule 59(e), and Rule 60(b)(6) of the Federal Rules of Civil Procedure. ECF 53 at 8. Neither Rule 50(b) nor Rule 59(e), however, are applicable here. Rule 50(b) provides for renewing a motion for judgment as a matter of law after a trial, and there has been neither a trial nor an original motion for judgment as a matter of law in this case. Rule 59(e) allows a party to file a motion to alter or amend a judgment, but there has been no judgment entered in this case. Thus, the Court construes Eagle West's motion as one made pursuant to Rule 60(b)(6).

contracts under Oregon law, as established by *Hoffman Construction Co. v. Fred S. James & Co.*, 313 Or. 464 (1992). Second, Eagle West argues that the legal effect of the original timing of the assignment cannot be cured. Third, Eagle West argues that it is entitled to summary judgment because Wakeman does not have a viable bad faith claim. In the alternative, Eagle West requests certification of the Opinion and Order for interlocutory appeal under to 28 U.S.C. § 1292(b) or certification of questions to the Oregon Supreme Court under to ORS § 28.200.

## A. Application of *Hoffman*

Eagle West's argument regarding the *Hoffman* framework merely restates its previous argument. As stated above, "motions for reconsideration are not the proper vehicles for rehashing old arguments and are not intended to give an unhappy litigant one additional chance to sway the judge." *Phillips*, 290 F.R.D. at 670 (quoting *Cheffins*, 2011 WL 1233378, at *1)). Further, the Court does not agree with Eagle West's characterization of its application of the *Hoffman* framework. Eagle West contends that the Court disregarded the *Hoffman* framework when it cited the law review article by Professor Johnny Parker, *Reconciling the Irreconcilable Conflict in Insurance Severability of Interests Clause Interpretation*, 20 CONN. INS. L.J. 61 (2013), to find ambiguous the "Acts of an Insured" exclusion. ECF 53 at 14.

Eagle West contends that the Court "rel[ied] on the law review article instead of an analysis under *Hoffman*." *Id.* at 15. This is not a correct reading of the Court's Opinion and Order. The *Hoffman* framework, as this Court described, is a three-step inquiry, which first requires the Court to examine the text of the policy to determine whether it is ambiguous—that is, susceptible to more than one reasonable interpretation. As the Oregon Supreme Court explained in another decision, "conflicting judicial decisions as to the proper construction of a clause in an insurance policy are evidence, although not necessarily conclusive, that the clause is *ambiguous*." *Jones v. Ins. Co. of N. Am.*, 264 Or. 276, 282 n.1 (1972) (citations omitted); *see*

*also St. Paul Fire & Marine Ins. Co. v. McCormick & Baxter Creosoting Co.*, 324 Or. 184, 215 (1996) ("The very fact that a number of courts have reached conflicting conclusions as to the interpretation of a certain provision is frequently considered evidence of *ambiguity*." (quoting John Alan Appleman and Jean Appleman, 13 *Insurance Law and Practice*, § 7404 (1976)). The Court does not believe that it erred in considering conflicting judicial decisions in determining whether the policy text at issue was ambiguous. The question before the Court was whether the definition of "an insured" coupled with the presence of a severability clause rendered the insurance policy ambiguous and, taking into consideration the breadth of conflicting judicial opinions on the matter, concluded that it did. That analysis is proper under *Hoffman*.

Additionally, Eagle West argues that this Court's opinion is contrary to *Ristine ex rel. Ristine v. Hartford Insurance Co. of Widwest*, 195 Or. App. 226 (2004). ECF 53 at 14-15. Eagle West argues:

> Here, "an insured" means ["]one or more insureds," and when "one or more insureds" is substituted into the exclusion for the defined term, it is clear that, like in *Ristine*, it is the type of act that is excluded from coverage *regardless of which insured committed it*. In *Ristine*, the court correctly set forth the reasoning why limiting the exclusion in the manner proposed on the basis of the Severability of Interest clause "ignores and does violence to the plain language of the insurance contract."

ECF 53 at 14-15 (citing *Ristine*, 195 Or. App. at 234) (emphasis added). Eagle West, however, fails to mention a key difference between the policy considered by the Oregon Court of Appeals in *Ristine* and the policy at issue here. In *Ristine*, "the policy expressly excludes from coverage bodily injury claims 'arising out of sexual molestation.'" *Ristine*, 195 Or. App. at 228. The policy notably did *not* exclude claims arising out of sexual molestation committed by any specific individual—insured or otherwise—but rather excluded *all* claims arising out of *any* sexual molestation, regardless of who committed it. *Id.* at 232 ("The policy refers to claims

arising out of sexual molestation without reference to any limitation as to who committed the act

of molestation."). That exclusion, therefore, would preclude coverage regardless of whether the

sexual molestation was committed by an insured household member named on the policy or by a

trespasser. The Oregon Court of Appeals held that the presence of a severability clause did not

affect the interpretation of that exclusion because "the exclusion is based on the nature of the act,

not the identity of the actor." *Id.* That, however, is not the case here. The exclusion at issue in the

pending lawsuit expressly references the identity of the action—"an 'insured.'" Edmundson

Decl. at 38 (ECF 16). Thus, Eagle West's reliance on *Ristine* is misplaced, and the Court adheres

to its analysis in its earlier Opinion and Order.

**B.  Timing of Assignment**

Eagle West also contends that the Court mischaracterized its briefing in the Opinion and

Order by stating that Eagle West "cite[d] no authority suggesting that Wakeman cannot cure

[the] mistake in timing but rather argues only summarily that, because Oregon law prescribes the

proper timing for an assignment, the mere existence of the original assignment prevents any

future assignment from taking effect." EFC 44 at 11. In support of that contention, Eagle West

cites several sections of its several briefs, in which it argued that Oregon law requires that an

assignment comes *after* a judgment is issued. The Court does not disagree that Eagle West made

*those* arguments and that this is a correct statement of law. The Court, however, adheres to its

earlier statement that Eagle West cited no authority suggesting that a party cannot *cure* an

undisputed mistake in timing. The Court also adheres to its analysis on that issue as contained in

the Court's earlier Opinion and Order.

**C.  Bad Faith Claim**

Regarding Wakeman's claim of bad faith failure to settle, Eagle West restates its

arguments previously made. The Court adheres to its earlier decision denying both parties'

cross-motions for summary judgment on the bad faith failure to settle claim. *See Phillips*, 290 F.R.D. at 670 ("[M]otions for reconsideration are not the proper vehicles for rehashing old arguments and are not intended to give an unhappy litigant one additional chance to sway the judge." (alteration in original) (quoting *Cheffins*, 2011 WL 1233378, at *1)).

## D.  Request for Interlocutory Appeal or Certification to the Oregon Supreme Court

Eagle West requests either leave to file an interlocutory appeal with the Ninth Circuit or certification of questions to the Oregon Supreme Court. Eagle West identifies three questions that it contends are suitable for either interlocutory appeal or certification: (1) whether Wakeman had standing to assert his claims under ORS § 31.825; (2) whether a retroactive amendment to the assignment cured the original deficiency under ORS § 31.825, and (3) whether a severability clause in an insurance policy renders an exclusionary clause ambiguous when the terms are defined in the policy. ECF 53 at 30.

### 1.  Interlocutory Appeal to the Ninth Circuit

Section 1292(b) "is to be applied sparingly and only in exceptional cases." *State of Arizona v. Ideal Basic Industries (In re Cement Antitrust Litig.)*, 673 F.2d 1020, 1027 (9th Cir. 1982). To certify an order for interlocutory appeal, a district court must find "that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see also ICTSI*, 22 F.4th at 1130. The Ninth Circuit has noted that because "federal rulings on state-law issues generally don't affect the state's law," certification under § 1292(b) "merely trades one federal forum for another." *Couch*, 611 F.3d at 634; *see also Ash Grove Cement Co. v. Liberty Mut. Ins. Co*, 2011 WL 96679, at *2 (D. Or. Jan. 10, 2011) (concluding "that an interlocutory appeal of a state law issue to another federal court would not materially advance the ultimate termination of this litigation"). All three

of the questions that Eagle West identifies are matters of state law; thus, it would not materially advance the ultimate termination of this litigation to have a different federal court opine on those questions. Eagle West's motion for certification of an order for interlocutory appeal is denied.

**2.  Certification of Questions to the Oregon Supreme Court**

The questions posed by Eagle West also do not well serve the purposes of certification. Not only would certification cause undue delay, it would not save the parties time and resources but rather would cause additional expenditures. Most importantly, however, the Court does not find that the legal questions posed by Eagle West are close questions. The Court already has explained why Eagle West's theories are unsupported by Oregon law, and now further concludes that it is unlikely the Oregon Supreme Court would hold otherwise. Thus, the Court would not benefit from waiting for the Oregon Supreme Court's determination. Given these findings and the associated delay and expense that certification would cause, as a threshold matter certification is inappropriate. *See Russell*, 938 F.2d at 318; *White*, 907 F.2d at 106; *Bi-Rite Enters.*, 757 F.2d at 443 n.3; *Marston*, 632 F.2d at 468 n.3; *Shevin*, 526 F.2d at 275.

## CONCLUSION

The Court DENIES Eagle West's motion for reconsideration and alternative motions for interlocutory appeal to the Ninth Circuit or certification of questions to the Oregon Supreme Court (ECF 53).

**IT IS SO ORDERED.**

DATED this 30th day of August, 2022.

*/s/ Michael H. Simon*
Michael H. Simon
United States District Judge